## NEWELL C. POND *versus* DAVID HARTWELL.

Under a count in an action for slander, alleging, generally, that the defendant charged the plaintiff with the crime of theft, it is competent for the plaintiff to give in evidence any words, which, although in their ordinary sense doubtful or even innocent, can be shown, by the aid of averments and *innuendoes*, under the circumstances, to be equivocal or ironical, and to be intended by the defendant, and understood by the hearer, to impute such crime to the plaintiff.

The grantee of land which had been previously attached in an action against the grantor, conveyed it with covenants of warranty. It was *held*, that he was an incompetent witness for the grantor in such action, notwithstanding the grantee testified on his *voir dire*, that he considered himself fully indemnified against his covenants, and felt no interest in the action.

CASE. The declaration alleged, that the defendant, on June 24, 1833, falsely and maliciously charged the plaintiff with the crime of theft. The defendant pleaded the general issue.

At the trial the plaintiff introduced, as a witness, Daniel Shattuck, who testified, that in June, 1833, certain goods were said to have been stolen from a wagon in the drive-way of Lakin's tavern in Groton ; that G. Green, being in company with the witness, asked the defendant, what he meant by telling such stories ; that upon the defendant's asking what stories he referred to, Green answered, "telling that the bakers would steal ;" that the defendant replied, " I did not ; I do not think you would steal, nor that Shattuck would steal ; I said Pond was a suspicious character, and if they would search the bakehouse, I guessed they would find the goods ;" that upon Green's asking the defendant, what he went into the bakehouse for, that morning, the defendant answered, that he went to see what he could see ; that Green then asked him, what he did see, and the defendant replied, that " he thought Pond looked guilty ;" that Thayer, who was the owner of the goods stolen, and one Felt, were present at this conversation ; that the plaintiff was a journeyman baker, in their employment as foreman ; and that during that day, Green's house and the bake-house, which was in the basement story of Green's house, were searched by a deputy sheriff, but without a precept.

The defendant called as a witness, William Eaton, who,

23 *

being objected to on the ground of interest, was put upon his *voir dire*, and testified, that since the action was brought, he had purchased the real estate attached on the plaintiff's writ, and had conveyed the same with covenants of warranty ; but that he considered himself fully indemnified against his covenants, and felt no interest in the suit. But the objection was sustained by the Court, and he was rejected as incompetent.

The judge instructed the jury, that if, upon the whole evidence, they were satisfied, that the defendant intended to charge, and did charge the plaintiff, with the crime of theft, they should return a verdict for the plaintiff; otherwise for the defendant.

The jury returned a verdict for the plaintiff. The defendant excepted to the instructions and ruling of the Court.

*Jan.* 18*th*, 1836.

*Farley*, for the defendant, to the point, that the witness, Eaton, was not incompetent, cited 2 Stark. on Evid. 745, 746, note, 750 ; *Ely* v. *Forward*, 7 Mass. R. 25 ; *Plumb* v. *Whiting*, 4 Mass. R. 518 ; *Union Bank* v. *Knapp*, 3 Pick. 96 ; *Widgery* v. *Haskell*, 5 Mass. R. 144 ; *Fernsler* v. *Carlin*, 3 Serg. & R. 130.

*H. H. Fuller*, and *B. Russell*, for the plaintiff, to the point, that the declaration was supported by the evidence, cited *Nye* v. *Otis*, 8 Mass. R. 122 ; *Gorham* v. *Ives*, 2 Wendell, 534 ; *Gibson* v. *Williams*, 4 Wendell, 320.

*April term* 1836.

SHAW C. J. delivered the opinion of the Court. Case for slander, in charging the plaintiff with the crime of theft. The defendant moves to set aside the verdict, as against the weight of evidence, and also on account of the rejection of Eaton as a witness incompetent on the ground of interest.

It being considered as settled in this Commonwealth by a series of decisions, that a count in slander, generally alleging that the defendant, by words, &c. charged and imputed to the plaintiff, the crime of theft, is a good declaration and will warrant a judgment upon it, it follows as a necessary consequence, that in the trial of an issue joined on such count, great latitude must be allowed in the admission of evidence. Any words, though in their natural and ordinary sense, doubtful or uncertain, or even innocent, but which in the ordinary mode of de

Pond
*v.*
Hartwell.

claring, by the aid of averments, *colloquia* and innuendoes, could be shown, under the particular circumstances, to be equivocal, or ironical, and to be intended by the speaker, and understood by the hearer, under whatever artful guise it may be concealed, to impute to the person the charge of crime, must be deemed slanderous, and competent, with the aid of the extraneous facts, which go to show that they were used in such sense, to support such general count. It is not therefore a conclusive objection to the verdict, that the words proved, imported suspicion only, and not a direct charge, because it is to be presumed after verdict, that they were proved to have been intended and understood to be used under such circumstances and in such a sense, as to give them the effect of a direct charge. In respect to the weight of evidence, although it may be considered upon the evidence as a balanced or doubtful case, yet the Court are all of opinion, that the verdict is not so manifestly against the weight of evidence, as to justify the Court in setting it aside. The jury, with the witnesses before them, and with better means of judging of the credit due to them, and of all the circumstances of the case, may have been well warranted in finding their verdict.

2. We are of opinion on the other point, that the witness, Eaton, was rightly rejected as incompetent, on the ground of interest. It appears by the report, that the land, which was attached on this writ, was subsequently purchased by the witness, mediately or immediately, from the defendant, and that he had conveyed away the same with warranty. We think he had a direct and immediate interest in the event of the suit. The attachment constituted a lien on the land, which would remain or be discharged, by the event of the suit. If the plaintiff has a judgment in this action, that land, notwithstanding the alienations, will be liable to be taken to satisfy such judgment, which liability will be discharged by a judgment for the defendant. It is an interest analogous to that of bail, who has always been held incompetent, till discharged, because, though a plaintiff, if he recover, may satisfy his judgment from other sources, yet such a judgment gives him certain vested rights against the bail. Or perhaps it is more nearly analogous to that of any after-attaching creditor, who is consid-

Pond
*v.*
Hartwell.

ered as having such an interest in defeating the suit of a prior attaching creditor, that he is permitted by statute to come in, under certain limitations, and defend such prior suit as a party. In a recent case in Essex, a creditor who had attached real estate, was considered as having such a vested interest in the estate, that he was allowed to appear in the Probate Court as a party to establish or defeat the probate of a will, upon which the title of his debtor, and of course his lien on the land, would depend. *Smith* v. *Bradstreet,* 16 Pick. 264. Whether the witness had retained the land, the lien on which would be confirmed or defeated by a judgment in this case, or had conveyed away the same with a warranty of the title against incumbrances, makes no difference in respect to his interest. The statement made on the voir dire by the witness, that he considered himself fully indemnified against his covenants, and therefore as having no interest in the suit, is not sufficient, in the opinion of the Court, to discharge his interest and restore his competency. The furthest extent to which courts have gone on this subject is this, that where a certain sum of money, the common measure of values and equivalents, can be so placed, either with the witness himself, or with the court and its officers, under a proper rule, directing and controlling its application according to the event, that the interest creating the disability may be met and extinguished, before the witness is, or can be damnified, it shall be considered as balancing or extinguishing that interest, so as to restore the competency of that witness. The same rule, it is believed, has been recently applied in the English courts. But there is no case, I believe, where a mere contract of indemnity has been considered as having this effect.

*Judgment on the verdict.*